IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * CRIMINAL NO.: WDQ-08-0086 |
| STEVE WILLOCK, *et al.* | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

On April 15, 2010, a jury convicted Anthony Fleming of conspiracy to participate in a racketeering enterprise whose objectives were robbery and the distribution of cocaine base ("crack") and powder cocaine. Fleming was also convicted of conspiracy to distribute and possess with intent to distribute crack and distribution of and possession with intent to distribute crack. The jury found that both drug offenses involved at least 50 grams of crack. On April 24, 2010, Fleming moved for a new trial. A hearing was held on July 9, 2010. For the following reasons, his motion was denied.

I.  Background

During the seven-day trial, the Government presented testimony about Fleming's activities as a member of the Tree Top Piru ("TTP") set of the Bloods gang. The evidence showed that TTP had a well-defined structure and mission. Each member of the gang held a "rank" and was required to "put in work"--*i.e.*,

collect dues, sell drugs, commit robberies, and intimidate and even murder rivals--to advance the gang's goals.  As TTP leader Steve Willock testified, these goals were the acquisition and preservation of territory and the generation of revenue for the gang through drug trafficking.

Willock explained that although it is against the Bloods' code to use "hard drugs," such as heroin and cocaine, Bloods members are permitted to sell drugs because it is profitable for the gang.  Willock stated that, "we sell drugs. The gang sells drugs.  Gang members [are] not . . . barred from selling drugs."  He also testified that TTP wanted to acquire territory to increase drug sales.  He explained that "the more territories [TTP] get[s], the more areas we got for drug dealing."  Terrance Brady, another high-ranking TTP member, testified that drug revenues were sometimes used to assist jailed TTP members with bail or to enable them to buy prison commissary items.

Brady and Troy Smith, another TTP member, testified that Fleming was a "five-star general" in TTP.  Smith sponsored Fleming's initiation into the gang and was accompanied by Fleming when he went to visit Willock in a Hagerstown prison to learn the history of TTP.[1]

The Government also presented the testimony of Detective

---

[1] Fleming was unable to meet with Willock because he was not on his visitors list.

Zachary Wein of the Baltimore Police Department ("BPD"). Wein testified that on April 24, 2007, while patrolling for illegal drug activity, he received information about suspicious activity in the 2800 Block of Greenmount Avenue in Baltimore. There, he encountered Fleming, and observed what he believed to be illegal drugs in a cell phone case on Fleming's hip. Wein arrested Fleming and searched the case. It contained two bags of what appeared to be crack.

Marta Iwashko, a chemist in the Drug Unit of the BPD, testified that her October 28, 2009 analysis revealed that the substance was about 62 grams of crack. Iwashko testified that BPD chemist Aisha Larkin had analyzed the crack on April 29, 2007,[2] but because Larkin was on extended leave from the BPD--and unavailable for trial--the Government asked that Iwashko reanalyze the drugs. Iwashko testified that she conducted a "totally separate and independent test" and that her conclusions did not rely on Larkin's notes or findings.

Over defense counsel's objection, the Court admitted a Drug Analysis Report that stated the findings of Iwashko and Larkin. The results of Iwashko's analysis were listed below the results of Larkin's. The Report bore the signatures of both chemists.

---

[2] Larkin also concluded that the substance was crack, but she estimated its weight to be about 74 grams. Iwashko testified that the difference in weight was attributable to the drugs' drying out during the two and a half years between analyses.

Both sets of results indicated that the substance in Fleming's cell phone case was more than 50 grams of crack.

On April 15, 2010, the jury convicted Fleming. On April 24, 2010, he moved for a new trial. Paper No. 974.

II. Analysis

Fleming argues that: (1) the admission of the Drug Analysis Report violated his Confrontation Clause rights because he was unable to cross-examine Larkin, and (2) the Court erred in denying his motion to sever the drug distribution count from the RICO and drug conspiracy counts.

A. New Trial Standard

Under Rule 33, a district court may grant a new trial "if the interest of justice so requires." *See* Fed. R. Crim. P. 33; *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985). There are two types of Rule 33 motions: motions based on (1) newly discovered evidence and (2) "other grounds." *See* Fed. R. Crim. P. 33(b). If the motion is based on "other grounds," the defendant must show an "error of sufficient magnitude to require reversal on appeal." *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004) (*quoting* Charles A. Wright *et al.*, *Federal Practice & Procedure* § 556 (3d ed. 2004)).

A "harmless" error is not a basis for a new trial. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be

4

disregarded."). An error is harmless if "[it is] clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."  *Neder v. United States*, 527 U.S. 1, 18 (1999).

> B. Confrontation Clause Challenge to the Drug Analysis Report

The Confrontation Clause gives the accused the "right to be confronted with the witnesses against him."  *Crawford v. Washington*, 541 U.S. 36 (2004), held that the Clause bars the "admission of testimonial statements of a witness who d[oes] not appear at trial unless [1] he [is] unavailable to testify, and [2] the defendant . . . had a prior opportunity for cross-examination."  541 U.S at 53-54.  In *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009), the Supreme Court held that "certificates of analysis" by laboratory analysts confirming that a substance possessed by the defendant was cocaine were testimonial statements under *Crawford*.  129 S. Ct. at 2532.  Thus, "absent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to 'be confronted with' the analysts at trial."  *Id*. (emphasis in original).

Fleming argues that the Drug Analysis Report included testimonial statements by Larkin because it included the results

5

of Larkin's analysis and her signature; thus, he contends, *Melendez-Diaz* required the exclusion of the Larkin portion of the Report because Fleming was not given an opportunity to cross-examine Larkin. Essentially, Fleming argues that the Drug Analysis Report should have been redacted to exclude Larkin's findings[3]; he does not challenge the admissibility of Iwashko's findings.

Assuming that admitting the unredacted Report was error, Fleming's motion fails because the error was harmless.[4] Iwashko's testimony and her portion of the Report--the admissibility of which Fleming does not challenge--provided the jury with evidence that Fleming possessed over 50 grams of crack on April 24, 2007. Fleming argues that the Larkin portion of the Report "corroborated" Iwashko's testimony and Report, and thus was essential to the jury's verdict. But Iwashko's testimony needed no corroboration: after detailing her extensive qualifications as forensic chemist, and explaining that Larkin had first analyzed the substances, Iwashko testified that she performed "a totally separate and independent test" and concluded that the substance in Fleming's cell phone case was 62 grams of crack. Even if the Court had excluded the Larkin

---

[3] *See* Mot. for New Trial 4.

[4] Confrontation Clause violations are subject to harmless error review. *United States v. Banks*, 482 F.3d 733, 741-42 (4th Cir. 2007).

6

portion of the Report--*i.e.*, "absent the error"--the jury would still have concluded that the substance was more than 50 grams of crack based on Iwashko's testimony and her portion of the Report.  The admission of the unredacted Report was, at most, a harmless error.

    C.  Challenge to the Court's Denial of Motion to Sever Counts

On April 10, 2010, Fleming moved to sever Count Four--which charged him with distribution of crack on April 24, 2007--from Counts One and Two, which charged the RICO and controlled substances distribution conspiracies, respectively.  He argued that the Government's evidence had not established a relationship between the April 24 incident and the conspiracies and, thus, that the charges were improperly joined.  Fleming asserts that the Court's denial of his motion was an error entitling him to a new trial.

Under Rule 8, "the indictment . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  The Fourth Circuit "ha[s] interpreted the latter two prongs of [Rule 8(a)] flexibly, requiring only a 'logical relationship' to one another."  *United States v. Cardwell*, 433

F.3d 378, 385 (4th Cir. 2005).[5]

The three counts in which Fleming was charged were logically related. As the Indictment alleged--and the testimony at trial made clear--one of the principal objectives of the alleged RICO conspiracy was the generation of revenue through drug trafficking. Willock testified that although TTP members were forbidden to use "hard drugs," their sale was permitted because it was "profitable for the gang." Willock also testified that drug dealing was one of the ways a TTP member could "put in work" and/or pay dues to the gang, and that TTP's efforts to acquire territory were meant to increase the gang's drug sales. Brady testified that drug revenues were sometimes used to assist incarcerated TTP members with bail or to enable them to purchase items in prison commissaries. Selling drugs was thus one of the principal activities of TTP.

The RICO count was thus properly joined with the narcotics trafficking counts because it has a logical relationship to them. The evidence at trial showed that TTP facilitated the drug dealing of its members and, in turn, relied on the revenues from that dealing. Thus, the RICO and drug conspiracies were

---

[5] *Cardwell* also noted that "Rule 8(a) permits very broad joinder because of the efficiency in trying the defendant on related counts in the same trial." 433 F.3d at 385.

interdependent: TTP was a drug-trafficking street gang.[6] Count Four bore a logical relationship to the other counts given that Fleming was charged--and the evidence showed--that he was engaging in one of the principal activities of TTP and *the* principal activity of any drug conspiracy.  Fleming's participation in a drug-related crime on April 24, 2007 certainly bears a logical relationship to counts charging that he was a member of a drug-trafficking street gang and a drug conspiracy.  The Court did not err in denying severance.

III.  Conclusion

For the reasons stated above, Fleming's motion for a new trial was denied.


July 9, 2010                                  _____/s/_____
Date                                          William D. Quarles, Jr.
                                              United States District Judge

---

[6] Unsurprisingly, nearly all the defendants charged in the RICO conspiracy were also charged in the drug conspiracy.